## BLASDEL, ADM'R, *v.* LOCKE & A.

Parol evidence is admissible to rebut the presumption of a resulting trust. A deposited a sum of money in a savings bank in the name of B, who was her niece, intending that it should be a gift to B, but retained the deposit-book in her own possession until her death. A by-law of the bank provided that deposits should only be withdrawn by the depositors or persons authorized by them. During her last sickness, A for the first time informed B of the gift. On a bill in chancery, brought by the administrator of A against B and the bank to recover the deposit, it was *held*, that the deposit created a trust in the bank in favor of B, and that, upon information of what had been done being conveyed by A to B, and acceptance by B, her title to the money became absolute, although there was no delivery of the deposit-book.

This is a bill in equity, by John C. Blasdel, administrator on the estate of Eliza Powers, against the Portsmouth Savings Bank and Sarah E. Locke, in which the plaintiff alleges that his intestate, Eliza Powers, at various times deposited in said savings bank money in the name of Sarah E. Locke, of Maine, but for her own use, assented in writing to the by-laws of the bank, and took and retained a duplicate book of the deposits, which is now in possession of the plaintiff; that the bank, though requested, refuses to pay to him; that he has been informed that the defendant, Sarah E. Locke, claims said deposits,—though she has at various times, since the decease of said Eliza, declared that she was never informed of said deposit during the life of said Eliza; and the plaintiff believes that said Eliza never gave or intended to give said deposit to said Sarah. The bill prays for an answer to the several matters charged, and that the bank be directed to pay over the money to him.

Sarah E. Locke answers under oath, that she believes said deposits were made for her use, and she now claims the amount; that she believes the first deposit was by direction of her grandmother, and for the use of her the said Sarah; that the said Eliza did on the same days make deposits in her own name; that the said Eliza, during her last sickness, said to her (the said Sarah) that there were three savings bank books in the trunk, and that one was for her (the said Sarah); and that that was the first information the defendant had of the deposits;—but she has since been informed, and believes, that said Eliza did long previously declare to others that said deposits were for the benefit of said Sarah; that she does not know who had possession of the deposit-book, but believes it was retained by said Eliza until her death, and that, as alleged in the bill, it has since come into the hands of the plaintiff; that she never lived in Maine; and has not declared that she was not informed of said deposits during the life of said Eliza.

The plaintiff files a general replication, with a notice that he will take no testimony, but reserves his right to take rebutting testimony. The defendant attempted to take testimony, but instead thereof the following agreement was entered into: "It is agreed, that Eliza Powers told two different persons that she had made a deposit in the savings bank which she intended for Sarah E. Locke, the defendant in this case; and that she showed the book to one of them, and that it was a deposit-book of the Portsmouth Savings Bank. It is further agreed, that either party at the hearing may refer to the by-laws of the bank and to the books of the bank for the dates and the amounts of the deposits in the names of Sarah E. Locke, Eliza Powers, and Elizabeth Powers, or to copies from said books. The certificates of deposit in the name of Sarah E. Locke all appear to be in the handwriting of Eliza Powers. The said Sarah is a niece of Eliza Powers."

It was agreed that the foregoing case be transferred to the law term, and that the court may render such judgment thereon as the law and facts may warrant.

*H. L. Hazelton*, for the plaintiff.

I. These deposits were made by the intestate, Eliza Powers, and were her own money, and not that of the claimant. From this transaction a resulting trust arises for the depositor. The authorities are clear that where, upon the purchase of property, the conveyance of the legal title is taken in the name of one person, while the consideration is given or paid by another (the parties being strangers to each other), a resulting trust immediately arises from the transaction, and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds.

The clear result of all the cases, without exception, is, that a trust of a legal estate results to the person who advanced the money. Hill on Trustees 91; Perry on Trusts, sec. 126; *Scoby* v. *Blanchard*, 3 N. H. 170; *Pritchard* v. *Brown*, 4 N. H. 397; *Gove* v. *Lawrence*, 26 N. H. 484; *Page* v. *Page*, 8 N. H. 187; *Peabody* v. *Tarbell*, 2 Cush. 232; *McGowan* v. *McGowan*, 14 Gray 121; *Perkins* v. *Nichols*, 11 Allen 542. And this trust results from the ownership and payment of the money, and is not founded on any agreement or declaration whatever. *Pembroke* v. *Allenstown*, 21 N. H. 107; *Moore* v. *Moore*, 38 N. H. 382. The principles above stated apply to personal as well as real estate. Perry on Trusts, sec. 130, and cases cited. If the nominal grantee be a brother, sister, nephew, or mother, it will be a trust. Perry on Trusts, sec. 144. Otherwise, if the grantee be a child. Perry on Trusts, sec. 144.

In case of a resulting trust, a bill in equity may be filed by the equitable for a conveyance of the legal estate. *Dow* v. *Jewell*, 18 N. H. 340; *Hall* v. *Young*, 37 N. H. 134; *Tebbetts* v. *Tilton*, 31 N. H. 283; *Hopkinson* v. *Dumas*, 42 N. H. 296; *Hill* v. *Pine River Bank*, 45 N. H. 300. It has been argued that, if a man transfers property to another, it must be presumed that it proceeded from an intention to benefit the other by making a gift, and conferring the beneficial interest; but, if such intention cannot be inferred consistently with all the circumstances attending the transaction, a trust will result. Perry on Trusts, sec. 151, and cases cited. How is it consistent with the idea of an intention to give this to Sarah E. Locke, of Rye, when the deposit was made in the name of Sarah E. Locke, of Maine, and the evidence of such deposit and intention to give to the former withheld from this claimant for more than twenty years? The universal rule in equity is said to be, that a court will not enforce a voluntary agreement in favor of a volunteer, as, by the supposition, the legal interest remains in the settler (who therefore at law retains the full control and benefit of it). A court of equity will not, in the absence of a valuable or good consideration, deprive him of that interest with which he has not actually parted.

Equity will look upon voluntary conveyances with suspicion, especially if made to strangers for no particular purpose. Hill on Trustees *83 and 84, and cases cited; Perry on Trusts, secs. 101 and 163.

It has long been an established principle with courts of equity, that they will not interfere to perfect the title of a party claiming merely as a volunteer. Hill on Trustees *83. There was no consideration between these parties. Natural love and affection has been held insufficient—*Kennedy's Ex'rs* v. *Ware*, 1 Barr (Penn.) 445; also, collateral consanguinity, clearly so. *Hayes* v. *Kershow*, 1 Sandf. 258 ; *Buford's heirs* v. *McKee*, 1 Dana 107.

II. This deposit cannot be claimed as a gift *inter vivos*, because it lacks the essential element of delivery. The alleged donor did not part with the possession and control of the property. By retaining the possession of the original deposit-book she kept the control of this deposit,—as, by the by-laws of the bank, the deposit could not be withdrawn without the production of the book. 2 Kent's Com. 437, *et seq.; Gage* v. *Gage*, 12 N. H. 371; *Marston* v. *Marston*, 21 N. H. 513 ; *Cook* v. *Brown*, 34 N. H. 460 ; *Reed* v. *Spaulding*, 42 N. H. 114 ; *Grover* v. *Grover*, 24 Pick. 261 ; *Chase* v. *Breed*, 5 Gray 440 ; *Brabrook* v. *Boston Five-Cent Savings Bank*, 104 Mass. 228.

In some of the cases, the fact of the instrument of gift remaining in the possession of its author, and not being acted on up to the time of his death, seems to have had influence on the court in deciding against the trust, and unquestionably that is a very strong circumstance against it. *Antrobus* v. *Smith*, 12 Ves. 39 ; *Dillon* v. *Coppin*, 4 Jur. 427 ; *Uniacke* v. *Giles*, 2 Molloy 257. Keeping a voluntary deed is considered as evidence of an intention not to part with the title. *Birch* v. *Blagrave*, Ambler 264; *Nalred* v. *Gilham*, 1 P. Wms. 577 ; *Cotton* v. *King*, 2 P. Wms. 358 and 674. Executing and recording a voluntary deed and a delivery to a third person is not a delivery which will pass the title against the donor. *Maynard* v. *Maynard*, 10 Mass. 456 ; *Barns* v. *Hatch*, 3 N. H. 304. The conduct and relative situation of the parties will constitute ingredients of evidence from which the court will infer it to have been the intention of the party not to divest himself of the beneficial ownership by the execution of a voluntary conveyance. Thus the deed being made *ex parte*, and not being communicated to the donee, is a circumstance to which much attention will be paid. In like manner, where it is proved that a voluntary conveyance was made only to answer a particular purpose, a trust will result for the benefit of the grantor. Hill on Trustees 108, 109 ; *Ward* v. *Lant*, Prec. Ch. (Finch) 182. The cases recognize the principle that it is a question of intent.

What was the intention of the depositor ? Did she intend to give the sums deposited to Sarah E. Locke, the claimant? If so, why did she keep possession of the bank book, which by the by-laws of the bank is made the evidence of ownership, and without the production of which the deposits could not be withdrawn, and for twenty-four years carefully conceal from this claimant the fact that such deposits had been made ? This is entirely inconsistent with an intention to make a gift. A deposit in the plaintiff's own name was controlled by proof that the money so deposited belonged, in fact, to the estate of

her deceased husband. *McCluskey* v. *Prov. Inst. for Savings*, 103 Mass. 300. If the intent existed, as it is claimed to be by her declarations, that intention was not executed by a delivery; and the retention of the book is evidence of a change of that intention, if it ever existed.

*Wm. H. Rollins*, for Sarah E. Locke.

The plaintiff's intestate, Eliza Powers, deposited money in the defendants' bank in the name and for the benefit of her niece, Sarah E. Locke, this defendant, with the intention to give it to said Sarah. The plaintiff attempts to defeat this gift and take the money away from this defendant, by suggesting that the delivery was not sufficient, and asks a court of equity to enforce this technicality to defeat the intention of the party. We claim that the delivery was sufficient, and cite *Benbow* v. *Townsend*, 1 Mylne & Keen 506 ; *Moore* v. *Hazelton*, 9 Allen 102 ; and *Howard* v. *Windham Co. Savings Bank*, 40 Vt. 597,—a case where the by-laws of the bank are similar, and the other circumstances the same as in the one at bar. It is cited with approval in *Brabrook* v. *Boston Five-Cent Savings Bank*, 104 Mass. 231. The last named case is cited by the plaintiff, but was decided on the circumstances in which it differs from the case at bar. When so deposited, neither Eliza Powers nor her representatives could sue the bank at law for it. This is admitted by bringing this bill in equity. It could have been reached by a creditor of Sarah E. Locke by the trustee process. The question whether the acts amount to a delivery is one of fact, depending on the intention of the party. *Hayes* v. *Davis*, 18 N. H. 600.

We admit that, as a general rule, when land is purchased in the name of one person with the money of another, there is a resulting trust in favor of the owner of the money. But the resulting trust is a mere matter of equitable presumption, and may be rebutted by other circumstances which negative that presumption. Hill on Trustees 96 ; Perry on Trusts, sec. 111. And for this purpose parol proof is admissible. *Page* v. *Page*, 8 N. H. 187 ; *Botsford* v. *Burr*, 2 Johns. Ch. 405, 416 ; Perry on Trusts, secs. 111, 150.

Such a trust cannot be raised in favor of a person by the mere payment of the purchase-money, if it is not the intention of either party that the estate should vest in him. *Dow* v. *Jewell*, 21 N. H. 470.

LADD, J. One argument of the plaintiff's counsel is, that the deposit of this money by Eliza Powers, under the circumstances shown, raised a resulting trust in her own favor. But parol evidence is admissible to rebut the presumption of a resulting trust. Perry on Trusts, sec. 139, cases in note 3 ; and we find from the case that it was the intention of Eliza Powers to make a valid gift of the fund in controversy to the defendant, Sarah E. Locke. Such intention must control ; and the effect of it is to overcome any presumption of a resulting trust that might otherwise be raised. This finding of fact,

therefore, seems to dispose of the argument and authorities as to a resulting trust.

To constitute a valid gift, *inter vivos*, there must be a delivery and acceptance by the donee. " A court of equity will not assist a volunteer, yet, if the act is completed, though voluntary, the court will act upon it." Lord ELDON in *Ex parte* Pye, 18 Ves. 149. Was there a sufficient delivery here ?

One of the by-laws of the bank, under which Eliza Powers deposited this money, provided that " Deposits and dividends may be withdrawn by the depositor, or by any person authorized by the depositor, on giving a week's notice thereof, on producing the original deposit-book, and giving a receipt therefor, in addition to the entry of such payment upon the said book." We are clear that she must be held to have adopted this by-law as part of her act in placing the money in the hands of the bank. And herein the case differs from Perry's Petition, 16 N. H. 44. There, there was a special deposit, wherein it was expressly provided that, in case of the death of the proposed donee, or *cestui que trust*, before arriving at the age of twenty-one, it was to be paid to the depositor or his heirs on demand.

The most favorable view for the plaintiff that can be taken is, we think, that the deposit amounted to a valid declaration of a trust in favor of the donee ; that it was a delivery to the bank as trustee for her niece. Although one condition of the by-law is, that the deposit shall only be withdrawn upon presenting the original deposit-book, still, another is, that it shall only be withdrawn by the depositor, or some person authorized by the depositor. Considering, then, that Eliza Powers adopted the whole by-law as part of her act in making the deposit, there would seem to have been a clear and absolute renunciation of title by her in the fund, and an unequivocal transfer of the possession upon the terms and conditions set forth in the by-law. She, in fact, chose this mode of making a complete and definite appropriation of the money. A stronger declaration of trust could hardly be framed than that created by the manner of making the deposits,—that is, in the name of her niece, without qualification or condition, supplemented by the by-law of the bank, which she adopted. We think, therefore, that the delivery to the bank as trustee for her niece was a sufficient delivery, good at least until the trust was revoked, and that an acceptance by the donee before a revocation (admitting it to be revocable) would consummate the gift.

This goes far enough to dispose of the case without inquiring whether the deposit was alone sufficient to pass the title absolutely to the donee, as has been held in such cases as *Howard* v. *Savings Bank*, 40 Vt. 597, and *Millspaugh* v. *Putnam*, 16 Abb. 380 ;—see, also, *Hunter* v. *Hunter*, 19 Barb. 631 ; *Grangiac* v. *Arden*, 10 Johns. 293 ; *Benbow* v. *Townsend*, 1 Myl. & K. 506 ; *Minchin* v. *Merrill*, 2 Edw. Ch. 333 ; *Penfield* v. *Public Administrator*, 2 E. D. Smith 305 ;—for the case shows that the intestate, before her death, informed the donee that there were three savings bank books in the trunk, and that one of

them was for her. If the donee then accepted her bounty, we think it thereupon became a perfected gift. The fact of such acceptance does not appear affirmatively in the case; but, considering that it was a benefit to the donee, burdened with no condition, we think her acceptance must be inferred from what does appear; and, according to the views expressed, the title to the money thereupon became absolute in the donee, Sarah E. Locke, and the defendants are entitled to a decree that                                    *The bill be dismissed.*